```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
LEO RAIZBERG and MISASH                       :
SECURITY SYSTEMS, INC.,                       :
                                              :
                           Plaintiffs,        :
                                              :
           -against-                          :   11 Civ. 8498 (KMW)
                                              :   OPINION & ORDER
JV CJSC GULFSTREAM SECURITY                   :
SYSTEMS, VENIAMIN PISMAN,                     :
ILDAR NASKHOUTDINOV, ARTHUR                   :
FIZULIN, VIKTOR POPOV, E.S.                   :
EXPRESS, INC., DMITRY KHANIN,                 :
ALEXEY BELIKHOV, and YEVGENIY                 :
GOROKHOV,                                     :
                                              :
                           Defendants.        :
---------------------------------------------------------------X
```

KIMBA M. WOOD, U.S.D.J.:

In their Second Amended Complaint ("SAC"), Misash Security Systems, Inc. ("Misash") and Misash's sole owner, Leo Raizberg ("Raizberg") (collectively, "Plaintiffs"), allege a variety of New York state law claims against JV CJSC Gulfstream Security Systems, Inc. ("Gulfstream"), Veniamin Pisman ("Pisman"), Ildar Naskhoutdinov ("Naskhoutdinov"), Arthur Fizulin ("Fizulin"), Viktor Popov ("Popov"), E.S. Express, Inc. ("E.S. Express"), Dmitry Khanin ("Khanin"), Alexey Belikhov, and Yevgeniy Gorokhov (collectively, "Defendants"). The claims alleged are for breach of contract, fraudulent inducement, fraud, unjust enrichment, conversion, and breach of fiduciary duty. [Dkt. No. 44]. Plaintiffs seek compensatory and punitive damages, various equitable remedies, and attorneys' fees.

Defendants Khanin, Gulfstream, and Pisman's have moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [Dkt. Nos. 32, 35]. For the reasons that follow, the motions are GRANTED.

1

I.  **BACKGROUND**

In considering Defendants' motions, the Court accepts as true the facts pled in the SAC, drawing all reasonable inferences in Plaintiffs' favor. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The Court also considers certain judicially noticeable facts, not "for the truth of the matters asserted," "but rather to establish that the matters [have] been publicly asserted." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424 (2d Cir. 2008).

A.  **Raizberg's Investment**

In the years immediately following the dissolution of the Soviet Union, Defendants Pisman, Naskhoutdinov, and Fizulin formed Gulfstream, a security company based in Moscow, Russia. (SAC ¶¶ 2, 5). In order to raise foreign capital, these Defendants sent Defendant Popov to the United States. In or about 1994, Popov convinced his friend and occasional business associate, Plaintiff Raizberg, to invest $300,000 in Gulfstream. (*Id.* ¶¶ 3-4, 41, 105).

Raizberg made this investment through Misash, a New York corporation that Raizberg wholly owned and formed to purchase a 21.18% interest in E.S. Express, a California corporation, which, according to Defendants, owned an 85% interest in Gulfstream. (*Id.* ¶¶ 5-7, 56, 99). As evidence of his investment, Raizberg received an E.S. Express stock certificate and a letter listing Misash as a 21.18% owner of E.S. Express. (*Id.* ¶¶ 59-60). By purchasing this interest in E.S. Express, Raizberg believed that he (through Misash) owned an 18% interest in Gulfstream. (*Id.* ¶¶ 8, 56).

Raizberg soon began receiving payments which he believed to be ownership profits from Gulfstream. (*Id.* ¶ 9). Although the SAC is not precise regarding the amount or timing of these payments, Plaintiffs allege that Raizberg "continued to receive the same payments all along" from Popov. (*Id.* ¶ 85). "Beginning in or around 2008, however, these payments began to get

smaller and arrive less frequently, and then ultimately ceased." (*Id.* ¶ 14). "In or around 2008-2009," Raizberg contacted Popov to ask why the payments had ended, to which Popov replied that Raizberg "had been 'paid back' or 'paid enough' by then." (*Id.* ¶ 16).

### B. Raizberg Files for Bankruptcy[1]

On April 2, 2001, Raizberg filed for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Southern District of New York. (*See In re Leo Raizberg*, Bankr. S.D.N.Y. Pet. No. 01-40972). In his petition, Raizberg represented to the bankruptcy court that he had no "[s]tock and interest in incorporated and unincorporated businesses" nor any "[i]nterest in partnerships or joint ventures." (Voluntary Pet. 4 [Bankr. Dkt. 1] ("Vol. Pet.")). Raizberg listed his monthly income as only that from "Social Security or other government assistance." (*Id.* at 6). Although Raizberg filed a Statement of Financial Affairs listing "Misash Security Systems" as a business that belonged to him, he stated that Misash ceased to exist in 1998. (Statement of Fin. Affairs ¶ 18 [Bankr. Dkt. 1]).

In response to Raizberg's voluntary petition, in which Raizberg produced "virtually nothing," the bankruptcy Trustee ordered Raizberg to produce any and all documents pertaining to his financial affairs. (*See* Stipulation Settling & Discontinuing Adversary Proceedings ¶ 3 [Bankr. Dkt. 21] ("Stip.")). When Raizberg produced nothing further, the Trustee commenced an adversarial proceeding against Raizberg, (*id.* ¶ 5), which eventually resulted in a default judgment against Raizberg, (*id.* ¶ 10). The case was reopened in 2005, and the adversarial

---

[1] The Court takes judicial notice of the publicly available and relevant filings in Raizberg's bankruptcy litigation for the limited purposes of establishing the "fact of such litigation and related filings," *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998), and in order to determine "the[ir] preclusive effect," *Sure-Snap Corp. v. State St. Bank & Trust Co.*, 948 F.2d 869, 872 (2d Cir. 1991) (taking judicial notice of bankruptcy court findings to determine their preclusive effect); *see also Lefkowitz v. Bank of N.Y.*, 676 F. Supp. 2d 229, 249 (S.D.N.Y. 2009) (Marrero, J.) ("Judicial notice may encompass the status of other lawsuits, including those in other courts, and the substance of papers filed in those actions.")

proceeding was discontinued based on Raizberg's representation that he did not retain any books, records, or documents that are estate property. (*Id.* ¶¶ 11, 14).

The Trustee's 2006 Final Report listed Raizberg's total assets as household goods, apparel, and cash from a judicial settlement. (*See* Trustee's Final Report, Form 1 [Bankr. Dkt. 24]). The Report did not list stock in any company or ownership of any corporation. The Trustee understood that, aside from what was listed, no additional property belonged to the estate. (*Id.* ¶ 2). On July 30, 2006, based on Raizberg's filings and the Trustee's Report, the bankruptcy court discharged Raizberg from personal liability for his debts. [Bankr. Dkt. 31]. The proceeding was terminated about a year later, in August 2007. [Bankr. Dkt. 38].

### C. Procedural History

Plaintiffs filed their original complaint on November 22, 2011, [Dkt. No 1], and filed a first amended complaint on May 10, 2012. [Dkt. No. 27]. Defendants Khanin, Gulfstream, and Pisman filed motions to dismiss the first amended complaint pursuant to Rules 12(b)(1) and 12(b)(6). [Dkt. No. 32, 35].[2] In response, on July 6, 2012, Plaintiffs requested leave to file a second amended complaint, which the Court granted on August 12, 2012. [Dkt. Nos. 40, 41]. Plaintiffs filed the SAC on September 7, 2012. [Dkt. No. 44]. Rather than file new motions to dismiss, however, Defendants relied on their original motions. [*See* Dkt. No. 45].

The SAC asserts six state law claims: (1) breach of contract against Defendants Gulfstream, E.S. Express, Pisman, Fizulin, and Naskhoutdinov for ceasing payments on Raizberg's investment, (SAC ¶¶ 104-110); (2) fraudulent inducement against these same Defendants and Popov for inducing Raizberg to invest, (*id.* ¶¶ 111-118); (3) fraud against all Defendants for representing to Raizberg that he was a Gulfstream shareholder, (*id.* ¶¶ 119-128);

---

[2] Zuzana Goldstein, a defendant in the original complaint, also brought a motion to dismiss. [Dkt. No. 14]. Because Goldstein is no longer named as a Defendant, her motion is now moot.

(4) unjust enrichment against all Defendants for accepting and benefitting from Raizberg's investment, (*id.* ¶¶ 129-133); (5) conversion against all Defendants for taking Plaintiffs' interest in E.S. Express, (*id.* ¶¶ 134-137); and (6) breach of fiduciary duty against Defendants Pisman, Khanin, and Popov for mismanaging Raizberg's investment, (*id.* ¶¶ 138-145).

## II.   ANALYSIS

The moving Defendants argue that Plaintiffs should be judicially estopped from proceeding with this case because the claims asserted in the SAC are inconsistent with the position that Raizberg took in his prior bankruptcy proceeding. The Court agrees that application of judicial estoppel is warranted in this case and requires dismissal.

### A.   Applicable Law

#### 1. Judicial Estoppel Generally

Judicial estoppel "is an equitable doctrine that can be invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). Its purpose is to protect the integrity of the judicial process "by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* (quotation marks omitted). Under this doctrine, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *Id.* at 749 (quotation marks omitted).

In determining whether judicial estoppel will apply, courts consider if: "1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (quoting *New Hampshire*, 532 U.S. at 750-51).

The Second Circuit further limits "judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir. 2005).

### *2. Bankruptcy Filings and Judicial Estoppel*

When a debtor files for bankruptcy, an estate is created that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Under the bankruptcy code, a debtor is required to disclose all of his financial affairs, including assets, liabilities, and income. 11 U.S.C. § 521(a)(1)(B)(i)-(iii). Failure to disclose assets can result in a variety of severe penalties. *See Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2000). After a debtor has filed the necessary information, a Chapter 7 Trustee is charged with making a final report and filing a final account of the administration of the estate with the bankruptcy court. *See* 11 U.S.C. § 704(a)(9); *see also* 28 U.S.C. § 589b(a)-(d) (detailing contents of Trustee's report, including all of the debtor's assets). In determining whether to discharge a debtor, the bankruptcy court relies on the information supplied in the debtor's disclosures and the Trustee's report. The court's ability to adjudicate is thus "impaired when the disclosure provided by the debtor is incomplete." *Rosenshein v Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996) (Conner, J.).

Courts routinely invoke judicial estoppel based when a position taken in bankruptcy court is inconsistent with the position taken in another court. *See, e.g.*, *Rosenshein*, 918 F. Supp. at 104; *Coffaro v. Crespo*, 721 F. Supp. 2d 141, 145 (E.D.N.Y. 2010); *Meyers v. Heffernan*, 740 F. Supp. 2d 637, 641 n.4 (D. Del. 2010). In the bankruptcy context, judicial estoppel protects the integrity of the bankruptcy system, which depends on the debtor's complete and honest disclosure of all assets. *Kunia v. St. Jean Fin., Inc.*, 233 B.R. 46, 58 (S.D.N.Y. 1999) (Sweet, J.);

*see also Kotbi v. Hilton Worldwide, Inc.*, No. 11 Civ. 3550, 2012 WL 914951, at *3 (S.D.N.Y. Mar. 19, 2012) (Griesa, J.) ("'It would violate the integrity of the bankruptcy system to permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently assert those claims for his own benefit in a separate proceeding.'" (quoting *Ibok v. Siac–Sector Inc.*, No. 05 Civ. 6584, 2011 WL 293757, at *6 (S.D.N.Y. Jan. 31, 2011) (Gorenstein, Mag.)).

### B. Application of Judicial Estoppel

Having taken judicial notice of the filings in Raizberg's bankruptcy proceeding,[3] the Court concludes that judicial estoppel is appropriate.

First, Raizberg's position before this Court is "clearly inconsistent" with his earlier position before the bankruptcy court. *See DeRosa*, 595 F.3d at 103. In the bankruptcy proceeding, Raizberg represented that he held no stock or corporate interests. (*See* Vol. Pet. 4; Stip. ¶ 14; Trustee's Final Report, Form 1 & ¶ 2). The entire SAC, however, is premised on the allegation that as a result of Raizberg's $300,000 investment in 1994, Raizberg has maintained a "highly valuable" interest in Gulfstream. (SAC ¶ 78). Until 2008, this interest generated profits for Raizberg "all along," which he received from Defendants through a family bank account in New York or in cash. (*Id.* ¶ 85). Although the Court is not aware of the precise value of the interest in 2001, when Raizberg filed for bankruptcy, Raizberg does not contend that the interest had no value. Indeed, the SAC repeatedly alleges that the payments which Raizberg received as profits from his investment began in 1994 and continued through 2008, covering the entire

---

[3] *See supra* note 1. Federal Rule of Evidence 201 permits judicial notice of a fact that is "(1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Aside from Goldstein, *see supra* note 2, Defendants do not explicitly request that the Court take judicial notice under Rule 201(c)(2). Accordingly, the Court takes judicial notice on its own pursuant to Rule 201(c)(1).

period of the bankruptcy proceeding. (*Id.* ¶¶ 13, 61, 85). Yet, at no point did Raizberg reveal these payments or his ownership interest in Gulfstream or Misash to the Bankruptcy Court.

Further, each of Plaintiffs' claims is predicated on an ownership interest in E.S. Express or Gulfstream during the period of the bankruptcy proceeding. The breach of contract claim asserts that since 1994, when Raizberg invested $300,000, Defendants agreed to provide Raizberg with an 18% permanent ownership interest in Gulfstream, which should have remained Raizberg's property indefinitely. (*Id.* ¶¶ 105-107). Similarly, the conversion and fiduciary duty claims allege that as a result of Raizberg's 1994 investment, Raizberg owned a share of E.S. Express through at least 2008, but that Defendants have since deprived Raizberg of this interest. (*Id.* ¶¶ 135, 140, 143). The fraudulent inducement, fraud, and unjust enrichment claims allege that Defendants obtained Raizberg's 1994 investment by misrepresenting that his investment would purchase an ownership share in Gulfstream; Defendants concealed their fraud through at least 2008, making Raizberg believe that he was in fact an owner. (*Id.* ¶¶ 115-116, 120-124, 131). Under each of these theories, Raizberg alleges that he held, or believed he held, an ownership interest in E.S. Express and Gulfstream from 1994 through at least 2008.

On the one hand, if Raizberg's bankruptcy position is accurate, then the allegations of the SAC are false. On the other hand, if the allegations of the SAC are accurate, then Raizberg flatly misrepresented the state of his financial affairs to the bankruptcy court. This is an irreconcilable inconsistency warranting the application of judicial estoppel. *See, e.g.*, *Rosenshein*, 918 F. Supp. at 104 (applying judicial estoppel where plaintiffs asserted claims on assets they failed to disclose in bankruptcy); *Coffaro*, 721 F. Supp. 2d at 145 (estopping defendant from bringing rightful ownership claim for a painting because defendant did not list the painting as an asset or make any claims for conversion or theft of the painting in bankruptcy proceedings); *cf. Sea*

*Trade Co. v. FleetBoston Fin. Corp.*, No. 03 Civ. 10254, 2009 WL 4667102 , at *6 (S.D.N.Y. Dec. 9, 2009) (Keenan, J.) (holding real estate development company was judicially estopped from collecting $10 million from a bank because it failed to disclose the claim against the bank as an asset in Argentine bankruptcy proceeding), *aff'd*, 427 F. App'x 43 (2d Cir. 2011).

Second, the bankruptcy court clearly "adopted" and relied upon Raizberg's prior position. Both the defendant (Raizberg) and the plaintiff (the Trustee) in the bankruptcy proceeding represented to the Bankruptcy Court that Raizberg had no stock, no corporate holdings, and no source of income related to such assets. (*See, e.g.*, Vol. Pet. 4; Stip. ¶ 14; Trustee's Final Report, Form 1 & ¶ 2). In granting Raizberg a discharge from personal liability for pre-bankruptcy debts, the bankruptcy court necessarily relied on these positions. *See In re Adelphia Recovery Trust*, 634 F.3d 678, 697 (2d Cir. 2011) ("The second criterion for judicial estoppel—that the earlier position have been adopted in some manner by the court—is easily satisfied here, as the Adelphia D–I–P's representations were indispensable to the bankruptcy court's willingness to enter the sale order."); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 59 (S.D.N.Y.), *amended on other grounds*, 63 F. Supp. 2d 342 (S.D.N.Y. 1999) (Sweet, J.) (holding that bankruptcy court adopted debtor's inconsistent position where the court dismissed "bankruptcy case based on a motion by the Trustee and [debtor's] stated position"). The Court concludes, therefore, that the bankruptcy court "adopted[,] in some way," Raizberg's prior position. *DeRosa*, 595 F.3d at 103.

Finally, absent a finding of judicial estoppel, judicial integrity would be undermined. The bankruptcy court relied on Raizberg's position that he did not have any unlisted equity or corporate interests; permitting Raizberg to assert a contrary position in this case would undermine the integrity of the judicial system. *See In re Adelphia Recovery Trust*, 634 F.3d at 697 ("Judicial estoppel . . . is concerned not with the repose of individual claims but with the

9

ability of courts to render their decisions based on faithful representations by counsel."); *Kotbi*, 2012 WL 914951, at *3.

For the foregoing reasons, the Court concludes that the requirements for judicial estoppel are met.[4]

Plaintiffs' arguments to the contrary are not convincing. First, Plaintiffs argue that Defendants "have not, and cannot, establish that anything Raizberg may have claimed during the course of his bankruptcy proceeding was, as a matter of fact, false." (Pls.' Mem. in Opp'n 4 [Dkt. No. 47] ("Pls.' Mem.")). But in order to apply judicial estoppel, the Court need not determine whether Raizberg's statements before the Bankruptcy Court are *actually* false (or whether his allegations in the SAC are false), *see Liberty Mut.*, 969 F.2d at 1388; it is sufficient that Raizberg has taken positions that are squarely inconsistent. Second, Plaintiffs contend that discovery is necessary "to determine whether Raizberg's claims here are inconsistent with positions he may have successfully taken during his bankruptcy." (Pls.' Mem. 4). The Court finds, however, that Raizberg's position is clear from the face of the bankruptcy court documents. (*See, e.g.*, Vol. Pet. 4; Stip. ¶ 14; Trustee's Final Report, Form 1 & ¶ 2).

Accordingly, the Court applies the doctrine of judicial estoppel to bar Plaintiffs from asserting that they own an interest in either E.S. Express or Gulfstream. As a result, because each of Plaintiffs' claims depends upon this ownership, the SAC must be dismissed.

---

[4] Although Raizberg, not Misash, was party to the bankruptcy proceeding, the Court finds Misash to be estopped as well. Raizberg and Misash are essentially indistinguishable, in that Raizberg was the founder and sole shareholder of Misash. (SAC ¶¶ 5, 56, 99); *see e.g.*, *Maitland v. Univ. of Minn.*, 43 F.3d 357, 364 (8th Cir. 1994) (noting that judicial estoppel can apply to a party "in privity with" the party that took the original position); *Shaw Family Archives Ltd. v. CMG Worldwide, Inc.*, No. 05 Civ. 3939, 2008 WL 4127830, at *9 (S.D.N.Y. 2008) (McMahon, J.) (same). Moreover, the application of judicial estoppel in this case is meant to "protect[] the integrity of the judicial system, not the litigants." *See, e.g.*, *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir. 2002) (joining Third, First, and Sixth circuits in concluding that privity is not required).

### C. Dismissal With Prejudice

Federal Rule of Civil Procedure 15(a) directs courts to "freely give leave" to amend the pleadings "when justice so requires." Fed. R. Civ. P. 15(a). However, "the decision to grant leave to amend is within the sound discretion of the trial court." *Bui v. Indus. Enterps. of Am., Inc.*, 594 F. Supp. 2d 364, 374 (S.D.N.Y. 2009) (Marrero, J.) (citations and internal quotation marks omitted). Exercising this discretion is appropriate where leave to amend would be futile, or where "plaintiff [is] on notice of a complaint's deficiencies and [yet] fails to correct those deficiencies after amendment." *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, No. 08 Civ. 7508, 2009 WL 3346674, at *2 (S.D.N.Y. Oct. 15, 2009) (Scheindlin, J.).

In this case, Plaintiffs have already filed two amended complaints and have not requested additional leave to amend. Moreover, Plaintiffs had the opportunity to amend their complaint to respond to Defendants' motions, which were originally filed with respect to their first amended complaint. Accordingly, Plaintiffs have already been afforded the opportunity to address the shortcomings in their complaint, and have failed to do so. *See id.* at *2 n.14 (collecting cases); *see also Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1021 (2d Cir. 1992) (upholding district court's refusal to grant leave to amend where plaintiff "had fair notice of its pleading deficiencies from the defendants' motion to dismiss, but it chose to ignore that warning"). Further, Plaintiffs have given no indication that they can allege additional facts that would render their complaint consistent with the position taken in the bankruptcy proceeding. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (finding no error in district court ruling dismissing claim with prejudice absent any indication that plaintiff could or would provide additional allegations leading to a different result).

### III. CONCLUSION

For the foregoing reasons, Defendants Khanin, CJSC, and Pisman's motions to dismiss are GRANTED. [Dkt. Nos. 32, 35]. The Second Amended Complaint is dismissed, with prejudice. The Clerk of the Court is direct to close this case. Any pending motions are moot.

SO ORDERED.

Dated: New York, New York
       March 26, 2013

/s/_____
Kimba M. Wood
United States District Judge